Estate of Emilie Grace
Xiao Ying Olsen, deceased, *et al.*,

      Plaintiffs,

      v.

Fairfield City School District
Board of Education, *et al.*,

      Defendants.

Case No.  1:15cv787

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.  (Doc. 105).  Plaintiffs filed a Response (Docs.114 & 132) and Defendants filed a Reply (Doc. 131).

## I.  BACKGROUND

Emilie Olsen ("Emilie") was a student at Fairfield Middle School and Fairfield Intermediate School.  Plaintiffs Marc and Cindy Olsen are the parents of Emile.  Plaintiff C.O. is the sister of Emilie.  Emilie committed suicide in December of 2014.  Plaintiffs claim that Emilie's suicide was the result of bullying Emilie suffered at school and online.  Plaintiffs claim that Emile, a female Asian-American, suffered bullying, harassment, assault, battery, and discrimination because of her race, national origin, and gender, and her association with Caucasian students, and also based upon sex stereotyping and upon her perceived sexual orientation and practices.  Plaintiffs claim that when they tried to end the bullying and asked school officials for help, school officials failed to stop the bullying.

In the Second Amended Complaint, Plaintiffs have brought twenty-two claims. Plaintiffs bring these claims against the Fairfield City School District Board of Education; the Fairfield City School District; Paul Otten, Superintendent, Fairfield City School District, in his individual and official capacities; Lincoln Butts, Principal, Fairfield Middle School, in his individual and official capacities; Jeff Madden, Principal, Fairfield Intermediate School, in his individual and official capacities; Mark Rice, Assistant Principal, Fairfield Middle School, in his individual and official capacities; Allison Cline, Assistant Principal, Fairfield Intermediate School, in her individual and official capacities; Melissa "Missy" Muller, Assistant Principal, Fairfield Intermediate School, in her individual and official capacities; Nancy Wasmer, Assistant Principal, Fairfield Middle School, in her individual and official capacities; Erica Green, Counselor, Fairfield Middle School, in her individual and official capacities; Candy Bader, Teacher, Fairfield Intermediate School, in her individual and official capacities; Minor Students 1-8; John/Jane Does 1-10, students and/or former students of Fairfield City Schools; John/Jane Does 11-20, Fairfield City School District employees, administrators and teachers, in their official and individual capacities; and Roger Martin, Fairfield City School District Title IX coordinator/administrator.

Defendants Fairfield City School District Board of Education, Fairfield City School District, Paul Otten, Lincoln Butts, Jeff Madden, Mark Rice, Allison Cline, Melissa "Missy" Muller, Nancy Wasmer, Erica Green, Candy Bader, Roger Martin, John/Jane Does 11-20 ("School Defendants") move to dismiss the following claims: (1) Count I: Substantive Due Process; (2) Count II: Title VI Race/National Origin Discrimination; (3) Counts IV, V, and VI: Section 1983; (4) Count VIII: Negligence / Gross Negligence; (5)

Count IX: Wrongful Death; (6) Count X: Breach of Duty of Care and Supervision; (7) Count XI: Intentional Infliction of Emotional Distress; (8) Count XII: Negligent Infliction of Emotional Distress; (9) Count XIII: Hazing/Bullying in violation of Ohio Revised Code § 2307.44; (10) Count XV: Breach of Express and/or Implied Contract; (11) Count XIV: Failure to Report Child Abuse in violation of Ohio Revised Code § 2151.421.

## II.   ANALYSIS

### A.  Motion to Dismiss Standard

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  Federal Rule of Civil Procedure 8 provides that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

## B. Fairfield City School District

School Defendants argue that the Fairfield City School District is not an entity which is capable of suing and being sued.

This Court has held that under Ohio law, a school district "does not exist and is not sui juris." *Mahdy v. Mason City Sch. Dist.*, No. 1:16-CV-845, 2017 WL 25504, at *2 (S.D. Ohio Jan. 3, 2017). Instead, it is the board of education of the school district that is the body politic and corporate which is capable of suing and being sued. *Id.* (citing Ohio Revised Code § 3313.17); *Getachew v. Columbus City Sch.*, Case No. 2:11-CV-861, 2012 WL 748783, at *2 (S.D. Ohio Mar. 8, 2012) (same); *Thompson v. Bd. of Educ.*, No. 3:12-CV-287, 2013 WL 6001626, at *3 (S.D. Ohio Nov. 12, 2013) ("Only the Board of Education is a properly-named party to this litigation, since the Board of Education is the body corporate capable of suing and being sued."). The Court notes that in addition to suing the Fairfield City School District, Plaintiffs have sued the Fairfield City School District Board of Education.

Accordingly, the School Defendants' Motion to Dismiss is GRANTED to the extent that Fairfield City School District is dismissed as a party.

## C. Defendants Otten, Bader, Martin, Green, Cline, Muller, and Madden

Defendants Otten, Bader, Martin, Green, Cline, Muller, and Madden maintain that the Second Amended Complaint contains insufficient allegations against them.

Plaintiffs allege that Witness 7's mother requested a meeting with Butts and Otten regarding the bullying of Witness 7, but was denied the opportunity to meet with either one. (Doc. 92, ¶ 376).

Plaintiffs allege that Bader, a teacher's aide at Fairfield Intermediate School,

witnessed Minor Student 2 push and slap Emilie in the face in gym class. (Doc. 92, ¶¶ 50-55). Plaintiffs allege that Bader failed to investigate the incident, impose any discipline, or report the incident to Plaintiffs. (Doc. 92, ¶ 53).

Plaintiffs allege that Defendants failed to notify Martin, the Title IX coordinator/administrator for the Fairfield City School District, of the harassment and discrimination Emilie suffered on the basis of sex, and failed to conduct an investigation into this conduct. (Doc. 92, ¶ 543). Plaintiffs explain that Martin's failure to carry out his duties as Title IX coordinator/administrator lead to the violations of Emilie's constitutional rights.

Plaintiffs allege that Green, a guidance counselor, failed to offer Emilie counseling despite her knowledge of the bullying and other wrongs suffered by Emilie, including her knowledge that a Fairfield student had told Emilie to go kill herself. (Doc. 92, ¶¶ 554, 602). Plaintiffs also allege that Green failed to inform them of the "go kill yourself" statement. (Doc. 92, ¶ 603).

Plaintiffs allege that Cline and Muller, Assistant Principals of the Fairfield Intermediate School, received an email from Marc Olsen on January 30, 2014 explaining that Emilie had been subject to bullying, physical assault and cyberbullying. (Doc. 92, ¶ 57). Plaintiffs allege that Cline and Mueller took no action to investigate and did not impose discipline upon the students involved. (Doc. 92, ¶ 62-63).

Plaintiffs allege that Witness 1 reported the bullying to Madden, the Principal of the Fairfield Intermediate School. (Doc. 92, ¶ 249).

Construing the Second Amended Complaint in the light most favorable to Plaintiffs, the Court concludes that it is plausible that these Defendants' acts violated

Plaintiffs' clearly established constitutional right. *See Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 353 (6th Cir. 2014) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562–63 (6th Cir. 2011). These allegations, if taken as true, support Plaintiffs' claim that Defendants Otten, Bader, Martin, Green, Cline, Muller, and Madden "knew about the ongoing student-on-student bullying and, given their positions of authority, were involved in making decisions regarding how it would be addressed." *See id.* Accordingly, the School Defendants' Motion to Dismiss is DENIED to the extent that it seeks to dismiss the claims against Defendants Otten, Bader, Martin, Green, Cline, Muller, and Madden.

### D. Section 1983

Plaintiffs have brought claims pursuant to 42 U.S.C. § 1983 based on violations of substantive due process and equal protection. The School Defendants have only moved for dismissal of Plaintiffs' substantive due process claims.

"To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Green v. Throckmorton*, 681 F.3d 853, 859-860 (6th Cir. 2012) (quoting *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 358–59 (6th Cir. 2001).

### E. Municipal liability

"A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Richmond v. Huq*, 885 F.3d 928, 948 (6th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 60–61, 131 S.Ct. 1350, 179

L.Ed.2d 417 (2011)).  To establish municipal liability, a plaintiff "must prove that 'action pursuant to official municipal policy' caused their injury."  *Id.* (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

"To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations."  *Winkler v. Madison Cty.*, 893 F.3d 877, 901 (6th Cir. 2018) (quoting *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015)).

Defendants Otten, Butts and Madden argue that their actions cannot serve as the basis for municipal liability because they did not hold final policymaking authority. These Defendants maintain that under Ohio law, only the school board holds final policymaking authority.

To determine whether final authority to make municipal policy is vested in a particular official, a court must resort to state law. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988)).  This includes "state and local positive law," such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom.  *Id.* (citing *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989)).  "Generally, identifying a policymaking official is a question of law for the court to decide, not one of fact to be submitted to a jury; however, the existence of a

local practice or custom, normally presents an issue of fact for the jury." *Ruble v. Escola*, 898 F. Supp. 2d 956, 977 (N.D. Ohio 2012) (citing *Praprotnik*, 485 U.S. at 124, 108 S.Ct. 915; *Worsham v. City of Pasadena*, 881 F.2d 1336, 1344 (5th Cir. 1989)).

Defendants Otten, Butts and Madden rely on Ohio Revised Code § 3313.661, which states in pertinent part:

> The board of education of each city, exempted village, and local school district shall adopt a policy regarding suspension, expulsion, removal, and permanent exclusion that specifies the types of misconduct for which a pupil may be suspended, expelled, or removed.

Ohio Rev. Code § 3313.661(A). This Court has addressed a similar argument based upon Ohio Revised Code § 3319.11, which states that a board of education has final authority to establish employment policy and make renewal and non-renewal decisions. *H.M. v. Bd. of Educ. of the Kings Local Sch. Dist.*, 117 F. Supp. 3d 992, 1008 (S.D. Ohio 2015). This Court explained that "[w]hile Ohio Rev. Code § 3319.11 vests the board of education with the final authority to establish employment policy, that statute does not make it implausible that principals were delegated final policymaking authority or that there was a custom of allowing principals to make final policy decisions with respect to the day-to-day conduct of employees, the necessity of reporting potential abuse to authorities, and the appropriateness of informing, or not informing, parents of special needs children of the potential abuse." *Id.* The Court reaches the same conclusion in this case. Therefore, the School Defendants Motion to Dismiss is DENIED in so far as it is based on the argument that the actions of Defendants Otten, Butts and Madden cannot serve as the basis for municipal liability under Section 1983.

### F.  Substantive due process

The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1.

As general rule, "[t]he Due Process Clause of the Fourteenth Amendment does not impose upon the state an affirmative duty to protect its citizens against private acts of violence, but rather, places limitations on affirmative state action that denies life, liberty, or property without due process of law." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1065-66 (6th Cir. 1998) (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1002-1003, 103 L.Ed.2d 249 (1989)).  As such, "the Due Process Clause does not impose a duty on a school to protect students from harm inflicted by private actors, such as their classmates." *Richardson v. Huber Heights City Sch. Bd. of Educ.*, 651 F. App'x 362, 365 (6th Cir. 2016).

There are two exceptions to this rule: "1) where the State enters into a 'special relationship' with an individual by taking that person into its custody, and 2) where the State creates or increases the risk of harm to an individual." *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 853 (6th Cir. 2016) (quoting *DeShaney*, 489 U.S. 199-201, 109 S.Ct. 998).  Because Emilie was harmed by students rather than school or government officials, there is no constitutional violation unless one of these two exceptions applies.  *Id*.

Plaintiffs maintain that they have adequately plead a substantive due process violation under the "state-created danger" exception.

To prevail on a state-created danger theory, Plaintiffs must establish three elements: (1) an affirmative act that creates or increases the risk to the plaintiff, (2) a special danger to the plaintiff as distinguished from the public at large, and (3) the requisite degree of state culpability. 819 F.3d at 854 (citing *McQueen v. Beecher Cmty. Sch*s., 433 F.3d 460, 464 (6th Cir. 2006)). "The ultimate question in determining whether an affirmative state action increased danger to an individual is whether the individual was safer before the state action than after it." *Id.* (citing *Jasinski v. Tyler*, 729 F.3d 531, 539 (6th Cir. 2013)).

The Sixth Circuit has found that facts similar to those alleged by Plaintiffs in the Second Amended Complaint do not establish liability under the state-created danger theory:

> Most of the actions Plaintiffs identify are not affirmative acts. Failing to punish students, failing to enforce the law, failing to enforce school policy, and failing to refer assaults to McGinnis are plainly omissions rather than affirmative acts. As for the remaining actions Plaintiffs cite—blaming DS and Stiles, and misleading Plaintiffs to believe Defendants would help DS—Plaintiffs offer no explanation or evidence of how these actions increased DS's exposure to peer harassment. At most, these acts returned DS to a preexisting situation of danger. Nothing suggests DS "was safer before" Defendants' accusatory statements and promises to help him than he was afterwards. *Jasinski*, 729 F.3d at 539 (emphasis omitted) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)). As a result, Plaintiffs' due process claim cannot prevail under a state-created danger theory.

*Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d at 855; *see also Mohat v. Mentor Exempted Vill. Sch. Dist. Bd. of Educ.*, No. 1:09 CV 688, 2011 WL 2174671, at *7 (N.D. Ohio June 1, 2011) ("allegation that the school failed to intercede when other students were bullying Eric, and that, in turn, this failure to act contributed to or caused his

decision to commit suicide. In other words, the Complaint, itself alleges a failure to act, not an affirmative action as the basis for its claims.").

However, the Sixth Circuit has explained that cases where the defendants remedied student-on-student violence are to be distinguished from "a claim in which school officials took such limited action in the face of a pattern of bullying and violence targeted at one student." *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 356 (6th Cir. 2014). This is because the "decision not to enforce rules against bullying or punishments for bullying gave students license to act with impunity." *Id.* The court explained:

> We decline to establish a standard in which "[d]ereliction of duty becomes a school's best defense," particularly in cases such as this where it "enabl[es] a pattern of physical abuse to persist," *Morrow v. Balaski*, 719 F.3d 160, 196 (3d Cir. 2013) (Fuentes, J. dissenting), and would reasonably be expected to embolden them to continue to escalate their abuse.

*Id. See also Engler v. Arnold*, 862 F.3d 571, 576 (6th Cir. 2017) ("There may be scenarios where a state official increases the risk of harm by encouraging a violent actor to do something he would not otherwise have done."). Here, Plaintiffs have alleged that the School Defendants' acts and omissions created a risk, or increased the risk that Emilie would be exposed to bullying, harassment, assault/battery, and discrimination. (Doc. 92, ¶ 520). Therefore, the Court concludes that if the allegations in the Second Amended Complaint are taken as true and all reasonable inferences are drawn in favor of Plaintiffs, Plaintiffs have stated a plausible claim for substantive due process.

Accordingly, the School Defendants' Motion to Dismiss is DENIED to the extent that it seeks to dismiss Plaintiffs' claim for substantive due process.

### G. **Title VI**

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

To sustain a student-on-student harassment claim against a school, the plaintiff must demonstrate the following elements: "(1) the harassment was so severe, pervasive, and objectively offensive that it could be said to deprive [plaintiffs] of access to the educational opportunities or benefits provided by the school; (2) [defendants] had actual knowledge of the harassment; and (3) [defendants were] deliberately indifferent to the harassment." *Brooks v. Skinner*, 139 F. Supp. 3d 869, 882 (S.D. Ohio 2015) (quoting *Maislin v. Tennessee State Univ.*, 665 F. Supp. 2d 922, 931 (M.D. Tenn. 2009) (restating the test in *Davis v. Monroe Cty. Bd. of Ed*uc., 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).[1]

### 1. **Harassment**

"In determining whether the alleged harassment was so severe, pervasive, and objectively offensive that it could be said to have deprived plaintiffs of access to educational opportunities, courts look to the nature, frequency, and duration of the harassment, as well as its effect on the victim." *Brooks v. Skinner*, 139 F. Supp. 3d 869, 882 (S.D. Ohio 2015) (citing M*arcum ex rel. C.V. v. Bd. of Educ. of Bloom-Carroll Local*

---

[1]Many of the cases cited in the discussion of student-on-student harassment claims are brought under Title IX, which prohibits gender discrimination by recipients of federal funding.  20 U.S.C. § 1681(a).  Title IX mirrors the substantive provisions of Title VI, courts apply case law interpreting the two statutes interchangeably. *See Grove City Coll. v. Bell*, 465 U.S. 555, 566, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984); *see also Horner v. Ky. Athletic Ass'n*, 206 F.3d 685, 689–92 (6th Cir. 2000) (discussing how the United States Supreme Court has used analytical framework in Title VI cases to interpret Title IX).

*Sch. Dist.*, 727 F.Supp.2d 657, 669 (S.D.Ohio 2010)).  However, as this Court has observed:

> The Supreme Court has cautioned that lower courts should "bear in mind" that "children may regularly interact in a manner that would be unacceptable among adults" and that students "often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it."  *Davis*, 526 U.S. at 651, 119 S.Ct. 1661. "Damages are not available for simple acts of teasing and name-calling among school children...." *Id.* at 652, 119 S.Ct. 1661. However, courts have recognized that the frequent use of racial slurs constitutes more than "simple acts of teasing and name-calling."

*Brooks v. Skinner*, 139 F. Supp. 3d 869, 882 (S.D. Ohio 2015).

The Second Amended Complaint contains the following allegations:

During her sixth grade year at Fairfield Intermediate School, Minor Student 1, followed Emilie into the girl's FIS restroom located near the library, and handed Emilie a razor and told her to "go kill yourself."  (Doc. 92, ¶ 35).

On another occasion, during her sixth grade year at Fairfield Intermediate School, Minor Student 1 used social media sites to bully and harass Emilie, telling Emilie to "go cut one of your vanes and die cuz I will be glad." (Doc. 92, ¶ 36).

In the Fall/Winter of 2013, a fake Instagram account was created and was entitled "Emilie Olsen is Gay."  (Doc. 92, ¶ 43).  The fake Instagram account included the statement: "I'm Emilie I'm Gay and I love to F*** [expletive deleted] random people in the woods and I love to chew tobacco and if U wanna F*** [expletive deleted] just meet somewhere in the woods."  (Doc. 92, ¶ 45).

In January of 2014, Emilie was involved in a physical altercation with Minor Student 2 in the gym at Fairfield Intermediate School. (Doc. 92, ¶ 48-49).  During the incident, Minor Student 2 slapped Emilie in the face and pushed her during an argument about the fake Instagram account which Minor Student 2 reportedly created.  (Doc. 92, ¶ 49).

In April or May 2014, Emilie was bullied and physically assaulted or battered by one or more African-American Fairfield students when she was pushed into a locker.  (Doc. 92, ¶ 67).

During the first week of her seventh grade year at Fairfield Middle School, Minor Student 2 began to bully and harass Emilie in the classroom,

verbally harassing her, pulling her hair, and engaging in other conduct. (Doc. 92, ¶ 91). Outside the classroom, Minor Student 2 shoved and crashing into Emilie "accidentally" while she walked the hallways of Fairfield Middle School. (Doc. 92, ¶ 92).

On September 9, 2014, Minor Student 4, a male seventh grade student at Fairfield Middle School, pushed Emilie into a locker. (Doc. 92, ¶ 98).

During her seventh grade year, Emilie suffered from multiple physical assaults and batteries at school, including being tripped by a group of students in the breezeway and having her books smacked out of her hands. (Doc. 92, ¶¶ 101-102).

During her seventh grade year, Minor Student 5, a male seventh grade student at Fairfield Middle School, tripped Emilie on the ramp in the 100 Wing, during the middle of the school day. (Doc. 92, ¶ 103).

On another occasion, Emilie was intentionally tripped by Fairfield Middle School students outside the school bus compound, and many students witnessed this and just laughed at Emilie. (Doc. 92, ¶ 104).

During her seventh grade year, Minor Student 6, a male seventh grade student, bullied and physically battered Emilie, including tripping her, verbally harassing her, and taking her pencils and breaking them on a regular basis. (Doc. 92, ¶ 105-106).

During her seventh grade year, Minor Student 4 would bully and harass Emilie by telling her that "Chinese people don't wear camo." (Doc. 92, ¶ 109).

On another occasion, during her seventh grade year at Fairfield Middle School, Emilie was pushed into a locker by a group of male Fairfield students who shouted at her, "Asians shouldn't wear camo and boots." (Doc. 92, ¶ 110).

During her seventh grade year at Fairfield Middle School, a group of African-American Fairfield students also bullied Emilie, deriding her about why she wore camouflage clothing and other "country" clothing given the fact that she was an Asian. (Doc. 92, ¶ 111).

In September of 2014, derogatory and racist messages about Emilie were written on restroom walls, stalls and mirrors of various restrooms located in Fairfield Middle School. (Doc. 92, ¶ 121). These restrooms were used daily by both students and teachers, and "cleaned" on a regular basis, but the messages about Emilie were not removed. (Doc. 92, ¶ 122). The messages about Emilie included, but were not limited to, such things as

"go die Emilie," "Emilie is a ho," "Emilie is a whore," and "Go kill yourself Emilie," and references to Emilie's race/national origin. (Doc. 92, ¶ 123).

In the fall of 2014, Emilie was bullied and physically battered at one of the Fairfield football games she was attending when several Fairfield students pushed her into a fence and yelled discriminatory comments in her face. (Doc. 92, ¶ 127).

On November 30, 2014, Minor Student 8 bullied, sexually harassed, and made racially discriminatory remarks against Emilie using Facebook. (Doc. 92, ¶ 182). These remarks included "come suck me off," "nobody wants to be your fucking friend," "dumb bitch why you try and be friends with me," "you never had a dick in your life shit," "shut that ugly ass up bitch. (Doc. 92, ¶ 183). All you need right now is a dick in your mouth," "I'll bend you over," "nobody wants to touch your Ebola looking ass. Go back to Africa," "you're stupider than I thought," "mud shark," "you're ugly," "your pictures look so gay…get the fuck out of here you sad ass bitch," "you get no dick," "fuck you fat ass bitch," and "where the fuck y'all rednecks live anyways, you're too ugly to die." (Doc. 92, ¶ 183). Minor Student 8 also suggested that people should have sex with Emilie as a form of exercise, saying "hey ride this [referring to Emilie] you will lose weight." (Doc. 92, ¶ 184).

The Court finds that these allegations amount to more than simple acts of teasing and name-calling among school children. The nature, frequency, and duration of the harassment, including the frequent use of racial slurs, demonstrate harassment which was so severe, pervasive and objectively offensive that these allegations, if taken as true, support a claim that Emilie was deprived of access to the educational opportunities or benefits provided by the school.

### 2. **Actual knowledge**

To sustain a student-on-student harassment claim against a school, courts have required actual knowledge by the school board itself, the school superintendent, or a school principal. *Brooks v. Skinner*, 139 F. Supp. 3d 869, 883 (S.D. Ohio 2015) (citing *Davis v. DeKalb Cty. Sch. Dist.*, 233 F.3d 1367, 1371 (11th Cir. 2000); *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 258 (6th Cir. 2000); *Doe v. Dallas Indep.*

*Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000)).

In the Second Amended Complaint, Plaintiffs allege that:

In January of 2014, there was a physical altercation in the Fairfield Intermediate School gym between Emilie and Minor Student 2. (Doc. 92, ¶¶ 51-52). Emilie was sent to see the Principal regarding the incident. (Doc. 92, ¶ 55). The father of Witness 4 also reported the incident to Fairfield Intermediate School and informed the school that the fight in the gym was not an isolated incident but rather part of a "pattern of harassment" against Emilie by a group of FIS students that included Minor Student 2. (Doc. 92, ¶¶ 65-66).

On January 30, 2014, Marc Olsen contacted Assistant Principals, Melissa "Missy" Muller and Allison Cline via email, and informed them that Emilie had become the target of bullying. (Doc. 92, ¶ 57). Marc Olsen informed Muller and Cline that Minor Student 3 and Minor Student 2 were the bullies, described the physical batteries on Emilie, and described details of the fake Instagram site entitled "Emilie Olsen is Gay."

Before the start of the 2014-2015 school year, Emilie received her class schedule for the upcoming school year and learned that she would be placed in the same "POD" (a sub-group of students from the same group) and classes as girls who had bullied her in the sixth grade at Fairfield Intermediate School. (Doc. 92, ¶ 71). This particular POD was called the "Aquarius POD." (Doc. 92, ¶ 73). Emilie was "very scared" to go back to school based on her placement in the Aquarius POD. (Doc. 92, ¶ 57). Cindy Olsen telephoned Assistant Principal Mark Rice, and left a message asking him to get Emilie's POD changed, in order to get her away from the bullies. (Doc. 92, ¶ 75).

In an August 15, 2014 email, Marc Olsen requested that Emilie be reassigned to another POD prior to the start of school. (Doc. 92, ¶ 78). Marc Olsen also attached his prior email dated January 30, 2014 to Muller and Cline. (Doc. 92, ¶ 79).

Before the first day of school, Marc Olsen arranged for a meeting with Assistant Principal Mark Rice, regarding the bullying of Emilie and the issue of getting her POD changed. (Doc. 92, ¶ 81). Emilie also attended the meeting and explained to Rice in detail about the bullying she had suffered the previous school year at the hands of Minor Student 2, Minor Student 3, and other Fairfield Intermediate School students. (Doc. 92, ¶ 82). Emilie told Rice she was "frightened to return to school." (Doc. 92, ¶ 85).

On August 25, 2014, Marc Olsen contacted Assistant Principal Mark Rice

via email, and reported that Emile was still being bullied at Fairfield Middle School by Minor Student 2. (Doc. 92, ¶ 95).

On September 9, 2014, Minor Student 4, a male seventh grade Fairfield Middle School student, pushed Emilie into a locker. (Doc. 92, ¶ 99). This incident was reported to Principal Lincoln Butts in writing. (Doc. 92, ¶ 99).

On September 10, 2014, one of the derogatory restroom graffiti messages written about Emilie was shown to Nancy Wasmer, Assistant Principal of the Fairfield Middle School. (Doc. 92, ¶ 127).

On October 21, 2014, a female seventh grade FMS student, believed to be Minor Student 1, and a group of her friends were involved in a verbal dispute with a group of Emilie's friends in or near the cafeteria of FMS during school hours. (Doc. 92, ¶ 130). The subject of the dispute was Minor Student 1's previous statement to Emilie that Emilie should go kill herself. (Doc. 92, ¶ 131). Emilie's friends were defending Emilie and asking Minor Student 1 to stop her incessant bullying of Emilie. (Doc. 92, ¶ 132). After the dispute escalated into yelling and cursing, Assistant Principal Mark Rice broke up the dispute. (Doc. 92, ¶ 133).

Rice identified several Fairfield Middle School students who were involved in the dispute, and sent these students to Principal Butts' office. (Doc. 92, ¶ 134). These students filled out written "incident reports" recounting what the dispute was about. (Doc. 92, ¶ 135). These written "incident reports" were turned in to the Fairfield Middle School administration and were maintained in the school's files and in Emilie's school file. (Doc. 92, ¶ 136).

On October 22, 2014, Marc Olsen met with Rice and Defendant Erica Green, the school Guidance Counselor, to address his concerns about Emilie, including the bullying, falling grades and Emilie's strange behavior. (Doc. 92, ¶¶ 143-144).

On November 3, 2014, Emilie completed a "True Color Personality Quiz" in her life and career planning class at School. (Doc. 92, ¶ 172). The quiz asked Emilie about her personality. (Doc. 92, ¶ 172). In filling out the quiz, Emilie described her "bad day symptoms" as "crying, depressing, yelling and screaming, passive resistance, and going into trance." (Doc. 92, ¶ 173). Emilie's quiz was turned in to school officials and maintained in Defendants' files. (Doc. 92, ¶ 174).

The Court finds that these allegations in the Second Amended Complaint, if taken as true, support a plausible claim that a school principal had actual knowledge of the harassment.

### 3. **Deliberate indifference**

Deliberate indifference, "can be found in cases where officials of a recipient entity with authority to take corrective action, having been advised of a Title [VI] violation, decide not to remedy the violation." *McCoy v. Bd. of Educ., Columbus City Sch.*, 515 Fed.Appx. 387, 391 (6th Cir. 2013) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-91, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)). "[A] plaintiff may demonstrate [a] defendant's deliberate indifference to discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Brooks v. Skinner*, 139 F. Supp. 3d 869, 883 (S.D. Ohio 2015) (quoting *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000)). As this Court has recognized, when determining the reasonableness of the response, this Court views the response based on the "totality of the circumstances," rather than look to each reported incident, standing alone. *Brooks v. Skinner*, 139 F. Supp. 3d 869, 884 (S.D. Ohio 2015) (applying hostile environment analysis to student-on-student harassment claim under Title VI).

In the Second Amended Complaint, Plaintiffs allege that:

Defendants did not conduct any investigation, draft any report to document the January 2014 incident in the gym, or impose consequences on anyone or take any corrective action. Defendants did not report the incident in the gym to Marc and Cindy Olsen, nor did they inform the Olsens that Emilie was sent to see the Principal regarding the incident. (Doc. 92, ¶ 55).

Defendants took no action to investigate the bullying, harassment, cyberbullying and physical assault and battery Minor Student 2, after it was reported by Marc Olsen in January of 2014. (Doc. 92, ¶ 62).

Defendants did not impose discipline on Minor Student 2 and the other students who had created the fake Instagram account about Emilie, and took no action to ensure that these students would stop bullying Emilie or

take down the fake Instagram site.  (Doc. 92, ¶ 64).

Despite this, Mr. Rice refused to change Emilie's POD.  (Doc. 92, ¶ 85).

During the meeting with Rice in August 2014, when Plaintiffs before the asked to have Emilie moved from the Aquarius POD, Rice suggested that Emilie "test the water," "try to make the most of it" for the first week of school, and "see how things went."  (Doc. 92, ¶ 86).  Rice also stated that changing Emilie's POD was too inconvenient for the school's administrators.  (Doc. 92, ¶ 86).

After the derogatory and racist restroom graffiti written about Emilie were shown to Wasmer, Wasmer took no action, and Defendants allowed the messages to remain in place until after Emilie's death.  (Doc. 92, ¶¶ 128, 129).

At the October 22, 2014 meeting, Defendants Green and Rice told Marc Olsen that despite Emilie's complaints of bullying, they would not move Emilie out of the Aquarius POD, and that Emilie simply "needed to buckle down" and deal with it.  (Doc. 92, ¶ 147).

Beyond taking written statements from several participants in the cafeteria fight, Defendants took no action to investigate the fight; Minor Student 1's bullying of Emile; Minor Student 1's statement that Emilie should kill herself; or the witness statements they now possessed about the prolonged bullying of Emilie.  (Doc. 92, ¶¶ 128, 154).

Defendants did not discipline or take any corrective action with regard to Minor Student 1 or any other students who had bullied Emilie.  (Doc. 92, ¶ 155).

Defendants did not offer Emilie counseling or any other support for the bullying she was suffering.  (Doc. 92, ¶ 156).

This Court acknowledges that courts should avoid second-guessing school administrators' disciplinary decisions.  *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016) (citing *Davis*, 526 U.S. at 648, 119 S.Ct. 1661).  However, if the allegations in the Second Amended Complaint are taken as true, Defendants took little to no action to remedy the peer harassment suffered by Emilie.  Plaintiffs allege that Defendants did not engage in investigation of the reports of harassment, and the

students involved in the harassment were not disciplined. Plaintiffs allege that Defendants refused to move Emilie out of the Aquarius POD and away from the students who had harassed her during the previous school year. The Court concludes that these allegations, if taken as true, support a claim that Defendants' response to the reports of bullying, harassment, cyberbullying and physical assault and battery was unreasonable.

Accordingly, the School Defendants' Motion to Dismiss is DENIED to the extent that it seeks to dismiss Plaintiffs' claim under Title VI.

### H. State law claims

### 1. Negligence

In the Second Amended Complaint, Plaintiffs brought a claim of "Negligence / Gross Negligence" against all Defendants. Defendants argue that they are entitled to political subdivision immunity from Plaintiffs' claims.

Ohio's Political Subdivision Tort Liability Act, codified in Ohio Revised Code Chapter 2744, addresses when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions. *Lambert v. Clancy*, 125 Ohio St.3d 231, 927 N.E.2d 585, 588 (Ohio 2010). A three-tiered analysis is used to determine whether a political subdivision is immune from tort liability:

> First, R.C. 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)'s exceptions are found to apply, a consideration of the application of R.C. 2744.03 becomes relevant, as the third tier of analysis.

*Greene Cty. Agric. Soc. v. Liming*, 89 Ohio St. 3d 551, 556–57, 733 N.E.2d 1141, 1146 (Ohio 2000) (citation omitted).

Ohio Revised Code § 2744.02(A)(1) provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." The Fairfield City School District Board of Education is a political subdivision under the Act. Ohio Rev. Code § 2744.01(F). The provision of a system of public education is a governmental function. Ohio Rev. Code § 2744.01(C)(2)(c). Therefore, under Ohio Revised Code § 2744.02(A)(1), the Fairfield City School District Board of Education is entitled to immunity.

Ohio Revised Code 2744.02(B)(4) grants an exemption from immunity political subdivisions "for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function." Therefore, this exemption "requires the injuries at issue to be caused *both* by a political-subdivision employee's negligence *and* a physical defect on the grounds." *Parmertor v. Chardon Local Sch.*, 47 N.E.3d 942, 948, (Ohio Ct. App. 2016) (emphasis in original). Plaintiffs have not alleged that the injuries to Emilie were caused by the physical defects of a building used in connection with a government function. Therefore, Ohio Revised Code § 2744.02(B)(4) does not apply, and the Fairfield City School District Board of Education is immune from liability.

The individually named Defendants, as employees, would also be immune from

liability for simple negligence. *See Mohat v. Horvath*, 2013 WL 5450296, *3 (Ohio Ct. App. Sept. 30, 2013). However, Plaintiffs have alleged that "[t]he actions and omissions of all Defendants constitute malicious purpose, bad faith and wanton and reckless conduct in violation of Ohio Revised Code Section 2744.03(A)(6)." (Doc. 92, ¶ 605).

Ohio Revised Code § 2744.03(A)(6) provides that an employee of a political subdivision is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside of the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

Ohio Rev. Code § 2744.03(A)(6).[2]

In a similar case involving a Jewish student allegedly subjected to religious-based harassment and bullying, the Sixth Circuit explained that "[a] plaintiff is not required to affirmatively demonstrate an exception to immunity at the pleading stage because that would require the plaintiff to overcome a motion for summary judgment in his complaint." *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 359 (6th Cir. 2014). "Instead, a plaintiff is only required to allege a set of facts which, if proven, would plausibly allow him to recover." *Id.* (citing *Mohat*, 2013 WL 5450296).

The Sixth Circuit in *Shively* explained that in the context of a peer harassment case, "[t]he question of recklessness turns on whether Defendants knew of and could foresee harm to a student and whether they took actions in response to the

_____

[2]When examining immunity pursuant to Ohio Revised Code 2744 in regards to individual employees of a political subdivision, the three-tier analysis the does not apply. *Cramer v. Auglaize Acres*, 113 Ohio St. 3d 266, 270, 865 N.E.2d 9, 13 (Ohio 2007).

harassment." *Id.* at 359-360. The court found that the plaintiff had set forth facts demonstrating that the individual defendants' actions were reckless under Ohio Revised Code § 2744.03(A)(6). *Id.* at 360. These facts were as follows:

> The Shivelys alleged that Defendants made the deliberate decision not to enforce school policies against bullying following several reports of harassment and violence against T.S., including a report that her name was on a "kill list," and only provided an alternative school placement after T.S. left the school district. The Shivelys further allege that although they were told the perpetrator of the "kill list" would not be permitted to return to the school, he was permitted back on campus three weeks later. In contrast to the cases cited above, the Shivelys have provided evidence that the harm to T.S. was not only foreseeable, but likely given the escalating attacks she faced and the degree to which she was singled out for harassment. This is not a case where school officials declined to enforce draconian punishments on a troubled student who later perpetrates an unforeseen act of violence; rather, it is a case about refusing to apply school policy to protect a targeted student enduring harassment and violence.

*Id.* The Court finds that the allegations in the Second Amended Complaint, detailed above, are likewise sufficient at this stage of the pleadings to show that the individual Defendants are not entitled to state-law immunity.

Accordingly, the School Defendants' Motion to Dismiss is DENIED to the extent that it seeks to dismiss Plaintiffs' negligence claim against the individually named Defendants based on Ohio's Political Subdivision Tort Liability Act; and GRANTED to the extent is seeks to dismiss Plaintiffs' negligence claim against Fairfield City School District Board of Education.

## 2. **Wrongful death**

The School Defendants argue that Plaintiffs cannot bring a wrongful death claim under Ohio law because Emile committed suicide.

In Ohio, "[t]he general rule is that suicide constitutes an intervening force which

breaks the line of causation stemming from the wrongful act, and, therefore, the wrongful act does not render the defendant civilly liable." *Fischer v. Morales*, 38 Ohio App.3d 110, 112, 526 N.E.2d 1098, 1101 (Ohio Ct.App.1987). "Nevertheless, a defendant will not be relieved of liability by an intervening force which could reasonably have been foreseen or by one which was a normal incident of the risk involved." *Id.* Therefore, Defendants remain liable if Emile's suicide could have been easily foreseen by Defendants.

As the Sixth Circuit has recently observed:

> Our newspapers and television networks consistently report instances when young people harm themselves or others after being bullied by their peers. Such occurrences may not be common within an individual school, but because reports of these tragedies are consistent and well-publicized, all school districts should realize that self-harm is a reasonably foreseeable result of bullying, without requiring specific evidence of the victim's mental state. If a school is aware of a student being bullied but does nothing to prevent the bullying, it is reasonably foreseeable that the victim of the bullying might resort to self-harm, even suicide.

*Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281, 288 (6th Cir.), *cert. denied*, 138 S. Ct. 121, 199 L. Ed. 2d 32 (2017).

As detailed above, Plaintiffs have alleged that Defendants were aware Emilie was being bullied but did nothing to prevent the bullying. Moreover, Plaintiffs allege that in the months prior to Emilie's death, Defendants knew that two other Fairfield students, Witnesses 1 and 2, had attempted suicide as a result of bullying at Fairfield schools. (Doc. 92, ¶¶ 246-262, 263-297). Therefore, taking the allegations made in the Second Amended Complaint as true, and drawing all reasonable inferences in favor of Plaintiffs, suicide was a reasonably foreseeable result of the bullying suffered by Emilie. Accordingly, the School Defendants' Motion to Dismiss is DENIED to the extent it seeks

to dismiss Plaintiffs' claim for wrongful death.

### 3. Breach of duty of care and supervision

The School Defendants argue that there was no special relationship between Emilie and the School Defendants, and therefore the only duty of care is to avoid reasonably foreseeable injuries to the students.

In Ohio, there is no general duty upon school officials to watch over each child at all times. *Nottingham v. Akron Bd. of Edn.*, 81 Ohio App. 3d 319, 322, 610 N.E.2d 1096, 1098 (Ohio Ct. App. 1992) (citing *Allison v. Field Local Sch. Dist.*, 51 Ohio App. 3d 13, 14, 553 N.E.2d 1383, 1384 (Ohio Ct. App. 1988)). "Unless a more specific obligation is assumed, such personnel are bound only under the common law to exercise that care necessary to avoid reasonably foreseeable injuries." *Id.* (citing *Commerce & Indus. Ins. Co. v. City of Toledo*, 45 Ohio St. 3d 96, 98, 543 N.E.2d 1188, 1192 (Ohio Ct. App. 1989)).

Plaintiffs allege that "Defendants also entered into a special relationship, and assumed a heightened duty of care by promising and agreeing, with Emilie and the Olsens that they would exercise added vigilance over Emilie, ensure that she was protected, and offer her support, guidance, and counseling." (Doc. 92, ¶ 624). However, Plaintiffs have not made specific allegations which would support this statement. Therefore, based on the allegations in the Second Amended Complaint, Plaintiffs have not stated a plausible claim that a heightened duty of care applies; and the individually named Defendants are bound only under the common law duty to exercise the care necessary to avoid reasonably foreseeable injuries. Accordingly, the School Defendants' Motion to Dismiss is GRANTED to the extent that it seeks to

dismiss Plaintiffs' claim that Defendants assumed a heightened duty of care with regards to Emilie.

### 4. Emotional distress claims

The School Defendants maintain that Plaintiffs' claims for intentional infliction of emotional distress and negligent infliction of emotional distress must be dismissed as to the School Board because under Ohio law, political subdivisions are immune from intentional tort claims and negligence.

As explained above, Ohio's Political Subdivision Tort Liability Act provides the Fairfield City School District Board of Education with immunity from civil liability unless one of the exceptions to immunity listed in Ohio Revised Code § 2744.02(B) apply. Above, this Court found that none of the exceptions listed in Ohio Revised Code § 2744.02(B) apply to Plaintiffs' claim of negligence brought against the Fairfield City School District Board of Education. The Ohio Supreme has held that none of exceptions to immunity apply to the intentional tort intentional infliction of emotional distress. *Hubbard v. Canton City Sch. Bd. of Edn.*, 97 Ohio St. 3d 451, 453, 780 N.E.2d 543, 546 (Ohio 2002); *see also Alden v. Kovar*, 2008 WL 3892181, *9 (Aug. 22, 2008) (school board is immune from liability on claim of intentional infliction of emotional distress because none of the exceptions in Ohio Rev. Code § 2744.02(B)(1)-(5) apply). Accordingly, the School Defendants' Motion to Dismiss is GRANTED to the extent that it seeks to dismiss Plaintiffs' claims for intentional infliction of emotional distress and negligent infliction of emotional distress against the Fairfield City School District Board of Education.

### 5. __Ohio Revised Code § 2307.44__

The School Defendants argue that Plaintiffs have not stated a claim under Ohio Revised Code § 2307.44, Ohio's hazing statute, because Plaintiffs have not alleged that an act of initiation into a student organization.

Ohio Revised Code § 2307.44 provides for civil liability for hazing and states in part: "Any person who is subjected to hazing, as defined in [Ohio Revised Code § 2903.31(A)] may commence a civil action for injury or damages, including mental and physical pain and suffering, that results from the hazing."  Ohio Revised Code § 2903.31(A) defines the criminal act of hazing as "doing any act or coercing another, including the victim, to do any act of initiation into any student or other organization that causes or creates a substantial risk of causing mental or physical harm to any person." As one Ohio court has explained: "The concept of a student organization, in this context, does not mean simply attending a given high school and therefore being a member of the student body."  *Duitch v. Canton City Sch.*, 157 Ohio App. 3d 80, 86, 809 N.E.2d 62, 66 (Ohio Ct. App. 2004).  In addition, "initiation into an organization implies that membership in the organization is voluntary, and that the victim has, through his or her actions or otherwise, consented to the hazing."  *Id.*

The allegations in the Second Amended Complaint do not describe a "student organization" as that term has been interpreted by Ohio courts.  Therefore, the peer harassment alleged in the Second Amended Complaint do not constitute hazing under Ohio Revised Code § 2307.44.  *Accord Duitch*, 809 N.E.2d at 66 ("even if we assume that the school authorities were aware of and tolerated 'Freshmen Friday' or behaved only in a reactive, not proactive, manner to deal with it, these actions nevertheless do

not constitute hazing as contemplated by the legislature"); *cf. Golden v. Milford Exempted Vill. Sch. Bd. of Edn.*, 2009 WL 2005368, *5 (Ohio Ct. App. 2009) (complaint states claim against school board where hazing and bullying which gave rise to claim of civil hazing was directly related to and predicated on plaintiffs' son and his fellow teammates being members of the ninth-grade boys basketball team). Accordingly, the School Defendants' Motion to Dismiss is GRANTED to the extent that it seeks to dismiss Plaintiffs' claim of hazing in violation of Ohio Revised Code § 2307.44

### 6. Breach of contract

The School Defendants maintain that Plaintiff's breach of contract claim should be dismissed because Ohio Revised Code § 3313.33 provides that no contract shall be binding upon a school board unless it is made or authorized at a regular or special meeting of the school board. The School Defendants point out that Plaintiffs have not identified such a contract.

Plaintiffs have not provided a written contract between the School Defendants and Plaintiffs. Instead, Plaintiffs allege that Plaintiffs "signed various school documents and issued certain payments as part of the enrollment process, and/or throughout the course of the school year, agreeing among other things to Emilie's attendance." (Doc. 92, ¶ 653).

In Ohio, "political subdivisions cannot be bound by contract unless the agreement is in writing and formally ratified through proper channels." *Duncan v. Cuyahoga Cmty. Coll.*, 29 N.E.3d 289, 295 (Ohio Ct. App. 2015). "As a result, political subdivisions cannot be made liable upon theories of implied or quasi contract." *Schmitt v. Educ. Serv. Ctr. of Cuyahoga Cty.*, 970 N.E.2d 1187, 1192 (Ohio Ct. App. 2012) (citing *Franks*

*v. Bolivar*, No. 5:11CV701, 2011 WL 5838209 (N.D. Ohio Nov. 18, 2011)).

Accordingly, the School Defendants' Motion to Dismiss is GRANTED to the extent that it seeks to dismiss Plaintiffs' claim of express or implied breach of contract.

## 7. **Ohio Revised Code § 2151.421**

The School Defendants maintain that Ohio Revised Code § 2151.421 does not impose a duty to report child abuse on school boards, and therefore the Fairfield City School District Board of Education is entitled to political subdivision immunity.

Ohio Revised Code § 2151.421 provides in relevant part:

> No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age . . . has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division.

Ohio Rev. Code § 2151.421 (A)(1)(a). While a "school teacher" or "school employee" is listed in Ohio Revised Code § 2151.421(A)(1)(b) as a "person" to which the reporting requirement applies, a political subdivision or school board is not listed. Ohio Revised Code § 2151.421(N) provides that "[w]hoever violates division (A) of this section is liable for compensatory and exemplary damages to the child who would have been the subject of the report that was not made."

Defendants maintain that the Fairfield City School District Board of Education is entitled to immunity under the general rule that political subdivisions are not liable in damages because the exception in Ohio Revised Code § 2744.02(B)(5) does not apply. That provision states:

In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code.

Ohio Rev. Code § 2744.02(B)(5). The Supreme Court of Ohio has explained that the term "expressly" in Ohio Revised Code § 2744.02(B)(5) means "in direct or unmistakable terms: in an express manner: explicitly, definitely, directly." *Butler v. Jordan*, 92 Ohio St. 3d 354, 357, 750 N.E.2d 554, 558 (Ohio 2001). A political subdivision or school board is not expressly listed as a person to which the reporting requirement in Ohio Revised Code § 2151.421 (A)(1)(a) applies.[3] Because civil liability is not expressly imposed, the exception to political subdivision immunity in Ohio Revised Code § 2744.02(B)(5) does not apply.[4]

Accordingly, the School Defendants' Motion to Dismiss is GRANTED to the extent that it seeks to dismiss Plaintiffs' claim under Ohio Revised Code § 2151.421 against the Fairfield City School District Board of Education.

## I. Striking allegations

The School Defendants argue that certain allegations in the Second Amended Complaint should be stricken because they are not relevant to Plaintiffs' claims.

---

[3]However, as one Ohio court has explained:

Unlike a political subdivision or board of education, R.C. 2151.421(A) does expressly list a "school teacher" or "school employee" as those persons required to report. Thus, within the meaning of R.C. 2744.03(A)(6)(c), R.C. 2151.421 expressly imposes liability on a school teacher or school employee for the failure to perform the duty to report known or suspected child abuse.

*Thompson v. Buckeye Joint Vocational Sch. Dist.*, 55 N.E.3d 1, 7–8, (Ohio Ct. App. 2016).

[4]Plaintiffs rely on several cases which rely on *Campbell v. Burton*, 92 Ohio St.3d 336 (Ohio 2001) for the proposition that a political subdivision is liable for failure to perform its duty imposed by Ohio Revised Code § 2151.421. However, the Ohio Supreme Court's decision in *Campbell* was superceded by the current version of Ohio Revised Code § 2744.02(B)(5). *Riley v. Trimble*, No. 5:07-CV-494, 2007 WL 2046810, at *5 (N.D. Ohio July 12, 2007).

Plaintiffs explain that these allegations show Defendants' pattern and practice of failing to properly respond to reports of bullying, harassment and discrimination.

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). As one federal district court has explained:

> When a party seeks to use that rule to strike factual allegations from a pleading, he must show that they have "no possible relation to the controversy." *Parlak v. U.S. Immigration and Customs Enforcement*, No. 05–2003, 2006 WL 3634385, at *1 (6th Cir. April 27, 2006) (internal quotation marks omitted) (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953)); *see also* 5C Wright & Miller, Federal Practice & Procedure § 1382 (explaining that "there appears to be general judicial agreement" that motions to strike factual allegations "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action"). Where the challenged allegations "might serve to achieve a better understanding of the ... claim for relief or perform some other useful purpose in promoting the just and efficient disposition of litigation," a motion to strike should be denied. *See Sherrills v. Beison*, No. 1:05–CV–310, 2005 WL 1711132, at *1 (W.D.Mich. July 21, 2005) (citations omitted).

*Starnes Family Office, LLC v. McCullar*, 765 F. Supp. 2d 1036, 1059 (W.D. Tenn. 2011). Defendants have not shown that the allegations they seek to strike have no possible relation to Plaintiffs' claims or that the allegations will cause some form of significant prejudice. While some of the allegations may prove to be irrelevant, the Court finds no basis to strike the allegations pursuant to Rule 12(f).

Accordingly, the School Defendants' Motion to Dismiss is DENIED to the extent that it seeks to strike certain factual allegations in the Second Amended Complaint.

### III.  CONCLUSION

Based on the foregoing, it is **ORDERED** that Defendants' Motion to Dismiss

(Doc. 105) is **GRANTED in PART** and **DENIED in PART**.

**IT IS SO ORDERED.**

_/s/ Michael R. Barrett_
JUDGE MICHAEL R. BARRETT